IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EDWIN W. SCARBOROUGH, :
:
        Petitioner, :
:
v. :   Civ. Act. No. 15-724-LPS
:
DANA METZGER, Warden, and ATTORNEY :
GENERAL OF THE STATE OF DELAWARE, :
:
        Respondents.[1] :

---

Edwin W. Scarborough. *Pro se* Petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

September 10, 2018
Wilmington, Delaware

---

[1] Warden Dana Metzger has replaced former Warden David Pierce, an original party to this case. *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Edwin W. Scarborough ("Petitioner"). (D.I. 3) The State has filed an Answer in opposition. (D.I. 20) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. BACKGROUND

On July 2, 2012, Petitioner was indicted on charges of drug dealing (cocaine), endangering the welfare of a child, and possession of drug paraphernalia. (D.I. 20 at 1) Petitioner filed a motion to suppress the drug evidence found in his motel room, which the Superior Court denied after a hearing. *Id.* at 1-2, 6. On January 6, 2014, the first day of the scheduled trial, Petitioner pled guilty to drug dealing in violation of 16 Del. Code § 4753(1), in exchange for which the State dismissed the other two charges. *Id.* at 2. The Superior Court sentenced Petitioner to 15 years at Level V incarceration, to be suspended after serving three years for decreasing levels of supervision. *See Scarborough v. State*, 119 A.3d 43 (Table), 2015 WL 4606519 (Del. Jul. 30, 2015). The Delaware Supreme Court affirmed Petitioner's convictions. *Id.* Petitioner did not pursue post-conviction relief in the Delaware state courts.

Thereafter, Petitioner filed in this Court a habeas Petition, asserting four grounds for relief. (D.I. 3) The State filed a Motion to Dismiss because the Petition contained three exhausted claims and one unexhausted claim of ineffective assistance of counsel and, therefore, constituted a mixed habeas petition. (D.I. 12) The Court gave Petitioner the opportunity to choose between having the Petition dismissed without prejudice or deleting the unexhausted claim in order to proceed with the three exhausted claims. (D.I. 17) Petitioner elected to delete the unexhausted claim and proceed with the exhausted claims. (D.I. 18) Consequently, the Petition presently pending before the Court asserts the following three grounds for relief: (1) Petitioner's guilty plea was rendered involuntary

because the trial court failed to advise Petitioner about any of the constitutional rights he was waiving by pleading guilty; (2) the police violated the plain view doctrine and illegally entered his motel room without a warrant in violation of his Fourth Amendment rights; and (3) the State's failure to inform him about the evidence mishandling scandal at the Office of the Chief Medical Examiner ("OCME") before he decided to plead guilty violated *Brady v. Maryland*, 373 U.S. 83 (1963), and rendered his guilty plea involuntary under *Brady v. United State*, 397 U.S. 742 (1970). (D.I. 3; D.I. 8 at 10; D.I. 18) The State filed an Answer asserting that the Petition should be denied because Claims One and Three do warrant relief under § 2254(d) and Claim Two is not cognizable on federal habeas review. (D.I. 20)

## II. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *see also Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

3

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. *See* 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied;" as explained by the Supreme Court, "it may be presumed that the

4

state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

Finally, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *see also Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341(2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

### A. Claim One: Involuntary Guilty Plea

In Claim One, Petitioner contends that his guilty plea was involuntary because he did not understand the constitutional rights he was waiving. (D.I. 8 at 2-5) He appears to premise this argument on the following two "facts": (1) the trial judge did not explicitly inform him of the specific constitutional rights he was waiving as a result of pleading guilty; and (2) he did not check the "yes" box on the Truth-In-Sentencing (TIS) Guilty Form indicating that he understood the constitutional rights he was waiving by pleading guilty. Petitioner did not present the instant argument asserted in Claim One to the Delaware Supreme Court on direct appeal.[2] Rather, on direct appeal, he argued that he did not knowingly waive his rights to appeal the denial of his suppression motion, and he presented the aforementioned two "facts" as support for his argument. *See Scarborough*, 2015 WL 4606519, at *3. The Delaware Supreme Court opined that the disposition

---

[2]In fact, in the points Petitioner included with counsel's Ruel 26(c) brief, Petitioner stated that he "is not challenging the validity of the plea because he voluntarily signed it." *Scarborough*, 2015 WL 4606519, at *3.

5

of Petitioner's appellate claims "hinge[d] on the Court's determination of whether [Petitioner] entered his guilty plea knowingly, intelligently, and voluntarily," and proceeded to analyze whether the two "facts" presented by Petitioner rendered his guilty plea involuntary. Since the Delaware Supreme Court held that Petitioner knowingly, intelligently, and voluntarily pled guilty with a full understanding of the rights he was waiving,[3] Claim One will only warrant relief if that decision was either contrary to, or an unreasonable application of, clearly established federal law.

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" and create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Petitioner's plea colloquy contains a lengthy discussion between Petitioner and the trial judge about Petitioner's wish to enter a plea agreement with the State that would resolve two cases[4] pending against him, although Petitioner expressed his reluctance to enter the plea because he was unhappy with the State's recommended sentence of eight years. (D.I. 15-2 at 17-23) The judge informed Petitioner that he could resolve just the current case by a plea, rather than both cases together, or he could choose to go to trial on his current charges. (D.I. 15-2 at 17-23) The judge recessed to allow Petitioner to consult with defense counsel and reconsider the plea offer in light of the judge's colloquy. (D.I. 15-2 at 23) After returning from the recess, defense counsel informed the judge that Petitioner wished to enter the plea agreement concerning the charges in the instant case. (D.I. 15-2 at 23) The judge engaged Petitioner in another colloquy, during which Petitioner clearly and explicitly stated that he had discussed his case with defense counsel, that he was satisfied with his counsel's representation, and that he understood

---

[3] *See Scarborough*, 2015 WL 4606519, at *3.

[4] The two cases pending against Petitioner were the instant case, Cr. ID 1204019450, and another case, Cr. ID 1208002007. (D.I. 20 at 2 n.3) Petitioner entered a guilty plea to a different charge of drug dealing in the second case on February 17, 2014. *Id.*

6

the consequences of entering the plea. (D.I. 15-2 at 24) The additional part of the plea colloquy relevant to the Court's consideration of Claim One is set forth below:

> COURT: In my left hand I also have the Truth in Sentencing Guilty Plea Form. Did you review the questions and provide the information shown?
>
> PETITIONER: Yes, sir.
>
> COURT: Did you understand the Constitutional Rights and civil liberties you would be giving up by entering this plea?
> Now, the other two misdemeanors – he's not pleading to those, right?
>
> COUNSEL: That's correct, Your Honor.
> Are those on the form?
>
> COURT: Yes. That's okay, I can mark them off.
> And you face from zero to 15 years?
>
> PETITIONER: Yes, sir.
>
> COURT: I will just put my initials here.
> Is that your signature?
>
> PETITIONER: Yes, sir.
>
> COURT: Do you have any questions for the Court regarding either the document or any other aspect in this matter?
>
> PETITIONER: Yes, one question.
>
> COURT: What's that?
>
> PETITIONER: The Level 4 time – I mean, I know it's – you know, it's not the norm, as Ms. Williams told me; but is there any way I can be held at Level 3 before I go to Level 4? I know it might no[t] happen, but I just had to ask.
>
> COURT: I got a better chance of getting tall.
>
> PETITIONER: Getting tall?
>
> COURT: I said I have a better chance of getting tall.
> Any other questions?

>    PETITIONER: No, sir.
>
>    COURT: Is anybody forcing you to do this?
>
>    PETITIONER: No, sir.
>
>    * * * *
>
>    COURT: Do you understand the consequences of what you are doing?
>
>    PETITIONER: Yes.
>
>    COURT: Do you still wish to enter the plea?
>
>    PETITIONER: Yes.

(D.I. 15-2 at 24)

As for the TIS form, Petitioner checked the appropriate boxes indicating that: (a) he knowingly and voluntarily entered into his plea agreement; (b) he had not been promised anything not contained in the plea agreement; (c) he was not forced or threatened to enter the plea agreement; and (d) he knew he faced a possible maximum sentence of 17 years under the criminal penalty statutes. (D.I. 15-1 at 25) However, Petitioner did not check either the "yes" or "no" box for the question setting forth the constitutional rights being waived and asking if he understood he was waiving those rights. *Id.*

After reviewing Petitioner's argument and the record, the Court concludes that Petitioner's assertion that he did not understand the rights he was waiving fails to provide compelling evidence as to why the statements he made during the plea colloquy that he did understand the rights being waived should not be presumptively accepted as true. During the plea colloquy, defense counsel stated that he went over the plea agreement and TIS form with Petitioner, and it was his opinion that Petitioner understood all the constitutional rights he would be waiving by pleading guilty. (D.I.

8

15-2 at 23) Petitioner also informed the trial judge that he had reviewed the plea agreement with counsel and understood what he was "agreeing to," that he had fully discussed the matter with counsel and was satisfied with his representation, and that he understood the consequences of what he was doing. (D.I. 15-2 at 24) In addition, when the trial judge asked Petitioner if he had any questions regarding the TIS Form or any other aspect of the case, Petitioner twice responded no. (D.I. 15-1 at 25) All of Petitioner's statements correspond with his explicit assertion on direct appeal that he was not challenging the validity of his plea. Given these circumstances, the Court finds that the Delaware State Courts reasonably applied *Blackledge* in holding that Petitioner was bound by the representations he made during the plea colloquy.

Turning to the second step of the § 2254 analysis, the Court finds that the Delaware Supreme Court reasonably determined the facts when it concluded that Petitioner's failure to check either the yes or no box on the TIS Form to the question asking about his understanding of the constitutional rights was merely an oversight. Petitioner also failed to check the yes or no box for the question asking, "Are you aware that conviction of a criminal offense may result in deportation/removal, exclusion from the United States, or denial of naturalization." (D.I. 15-1 at 25) The question concerning the waiver of constitutional rights is located immediately above the box setting forth the offenses and penalties, and the question about deportation is located immediately below the box. Notably, Petitioner checked the "yes" box when answering the last question on the form, "Have you read and understood all the information in this form." (D.I. 15-1 at 25) The fact that Petitioner checked a box for every question on the form but the questions immediately preceding and following the box dissecting the middle of the form suggests that the absence of checks for those two questions was the result of a visual oversight due to the placement of the box listing the penalties.

The Supreme Court has repeatedly "treated evidence of a defendant's prior experience with the criminal justice system as relevant to the question whether he knowingly waived constitutional rights." *Parke v. Raley*, 506 U.S. 20, 36 (1992). As the trial judge stated during the plea colloquy, Petitioner had three prior felony convictions,[5] which were the result of Petitioner entering a plea agreement in 2005. *See Scarborough v. State*, 938 A.2d 644 (Del. 2007). As such, Petitioner was not a "newcomer to the law" or "an uninitiated novice" with respect to the plea process, which further suggests that he understood rights he was waiving by entering a plea. *See United States v. Watson*, 423 U.S. 411, 424-25 (1976); *see e.g. Alston v. Redman*, 34 F.3d 1237, 1254 (3d Cir. 1994) (holding that suspect's written waiver of his *Miranda* rights was not coerced, in light of his age, literacy, and prior experience in criminal justice system).

Based on the foregoing, the Court concludes that the Delaware Supreme Court reasonably held that Petitioner's guilty plea was knowing, intelligent, and voluntary. Accordingly, the Court will deny Claim One for failing to satisfy § 2254(d).

**B. Claim Two: Fourth Amendment Violation**

In Claim Two, Petitioner alleges that the police violated his Fourth Amendment rights by seizing the drugs from his motel room without a search warrant or prior consent to enter the room. For the following reasons, the Court concurs with the State's contention that these arguments do not warrant relief.

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *Id.*; *see also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for

---

[5](D.I. 15-2 at 20)

suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Significantly, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id.*

In this case, Petitioner filed a pre-trial motion to suppress the evidence seized from his motel room pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure, and the Superior Court denied that motion after conducting a hearing. This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the Delaware state courts. Petitioner does not contend that a structural defect exists in Delaware's criminal process preventing a full and fair litigation of his suppression motion. The fact that Petitioner disagrees with the Delaware state court decisions denying his argument and/or the reasoning utilized therein is insufficient to overcome the *Stone* bar. Therefore, the Court will deny Claim Two as barred by *Stone*.

### C. Claim Three: Involuntary Plea/OCME Scandal

In his final Claim, Petitioner cites to *Brady v. Maryland* and *Brady v. United States*, refers to the OCME's evidence mishandling scandal, and asserts that there is a reasonable probability he would not have pled guilty and would have proceeded to trial had he known that he or defense counsel "would have been able to discredit the government's drug analyst and cast doubt upon the chemical composition of the drugs." (D.I. 8 at 10, 13) The record reveals that Petitioner did not present the

11

instant OCME evidence scandal argument as a way to challenge to the validity of his guilty plea in his direct appeal. Rather, Petitioner's appellate argument explicitly stated that he "is not arguing that his plea should be rescinded and this matter set aside for a new trial; he is arguing that that Trial Court erred in its suppression ruling and but for that incorrect ruling, [Petitioner] would never have been in a position to have to plea or go to trial as the charges would have been dropped." (D.I. 16-1 at 5) Even Petitioner's supplemental memorandum (which was filed after the Delaware Supreme Court decided *Brown v. State*, 108 A.3d 1201 (Del. 2015), another case involving the OCME scandal with a similar fact pattern) specifically stated that he was not seeking to "overturn[] his plea pursuant to Rule 61 and seeking a new trial, as was the case in *Brown*." (D.I. 16-7 at 3); *see also Scarborough*, 2015 WL 4606519, at *1. Instead, Petitioner's supplemental memorandum stated he was seeking to have the Delaware Supreme Court "reverse the decision of the trial judge, who determined that the police had violated his civil rights, on the admissibility of the evidence seized." (D.I. 16-7 at 3) For all of these reasons, the Court concludes that Petitioner did not exhaust state remedies for Claim Three as it is presented in this proceeding.

Moreover, even though the Delaware Supreme Court held that Petitioner's guilty plea was knowing, voluntary, and intelligent, that holding was not an implicit adjudication of Petitioner's instant argument. For instance, the Delaware Supreme Court first summarized Petitioner's argument regarding the OCME evidence mishandling scandal as alleging "the State did not prove the authenticity of the drug lab report and that, in light of the recent scandal at the Office of the Chief Medical Examiner, there is a 'reasonable chance' that the drug evidence in his case had been tampered with." *Scarborough*, 2015 WL 46066519, at *2. After stating that it would not consider Petitioner's ineffective assistance of counsel claim on direct appeal, the Delaware Supreme Court explained that the "disposition of [Petitioner's] remaining claims hinges on the Court's

12

determination of whether [Petitioner] entered his guilty plea knowingly, intelligently, and voluntarily." *Scarborough*, 2015 WL 4606519, at *3. The Delaware Supreme Court then stated "[i]t is well-settled that a knowing and voluntary guilty plea waives a defendant's right to challenge any errors occurring before the entry of the plea, even those of constitutional dimensions." *Id.* Thereafter, the Delaware Supreme Court opined that that the record "reflects that [Petitioner] knowingly, intelligently, and voluntarily pled guilty with a full understanding the rights he was waiving, include[ing] his right to appeal the suppression hearing," and held that Petitioner's knowing and voluntary plea "waived his right to challenge the suppression ruling and the authenticity of the testing of the drug evidence." *Id.* at *3. In short, the Delaware Supreme Court's conclusion that Petitioner waived his argument regarding the effect the OCME evidence scandal would have had on his suppression motion was not an adjudication of his instant argument that his guilty plea was rendered involuntary as a result of the State's failure to disclose the OCME evidence scandal. Thus, Claim Three is unexhausted.

At this juncture, Rule 61(i)(1) would prevent Petitioner from raising Claim Three in a Rule 61 motion because more than one year has passed since his judgment of conviction became final. *See* Del. Super. Ct. Crim. R. 61(i)(1) ("A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final."). Rule 61(i)(3) would also preclude him from raising the argument in a Rule 61 motion because he did not present the issue first on direct appeal. *See Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002) (finding Rule 61(i)(3) would bar Superior Court from considering claim because Petitioner did not raise it in proceedings leading to his conviction). Given these circumstances, the Court must treat Claim Three as technically exhausted but procedurally defaulted, which means the Court cannot review the merits of the instant Claim

13

absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner does not assert any cause for his failure to present the instant OCME evidence mishandling scandal/involuntary plea argument either on direct appeal or in a Rule 61 motion and then on post-conviction appeal. In the absence of cause, the Court will not address prejudice. The miscarriage of justice exception also does not excuse Petitioner's procedural default, because he has not provided any new reliable evidence of his actual innocence. The Court notes that the OCME evidence mishandling scandal does not constitute new reliable evidence of Petitioner's actual innocence, for reasons including that he has presented nothing definitively demonstrating that the evidence in Petitioner's case was mishandled. Accordingly, the Court will deny Claim Three as procedurally barred.

Finally, even if the Court were to liberally construe Claim Three as contending that the State violated *Brady v. Maryland* by failing to inform him about the OCME misconduct prior to his suppression hearing, and that he would have succeeded in having the drug evidence suppressed and his case dismissed had the OCME evidence mishandling and chain of custody issues been revealed at that time,[6] it is still unavailing. As just discussed, Petitioner presented his argument regarding the potential effect knowledge of the OCME evidence mishandling scandal would have had on his suppression hearing to the Delaware Supreme Court on direct appeal, and the Delaware Supreme Court denied the argument as having been waived by his knowing, intelligent, and voluntary guilty plea. *See Scarborough*, 2015 WL 4606519, at *4. Thus, this version of Claim Three could only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

---

[6]The State construes Claim Three in this manner, and asserts that the Court should deny it as meritless. (D.I. 20 at 7-9)

14

A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused, including impeachment evidence and exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). Pursuant to *Brady v. Maryland*, "[p]rosecutors have an affirmative duty 'to disclose [*Brady v. Maryland*] evidence . . . even though there has been no request [for the evidence] by the accused,' which may include evidence known only to police." *Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 284 (3d Cir. 2016). "To comply with *Brady* [*v. Maryland*], prosecutors must 'learn of any favorable evidence known to the others acting on the government's behalf.'" *Id.*

In order to prevail on a *Brady v. Maryland* claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or had impeachment value; (2) the prosecution suppressed the evidence, "either willfully or inadvertently;" and (3) the evidence was material. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). A petitioner demonstrates materiality of the suppressed evidence by showing a "reasonable probability of a different result," which requires a showing that the suppressed evidence "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

The OCME evidence mishandling scandal constitutes impeachment evidence in this case. *See Brown v. State*, 108 A.3d 1201, 1205-06 n. 30 (Del. 2015) (holding that OCME evidence mishandling investigation constitutes impeachment material in *Brown*'s case and fact patterns like it); *State v. Miller*, 2017 WL 1969780, at *6 (Del. Super. Ct. May 11, 2017) (stating that all of hundreds of Rule 61 motions asserting similar *Brady v. Maryland* claims argue that State suppressed valuable impeachment evidence when it failed to disclose that drugs submitted to OCME were being tampered with and/or stolen from lab); *see also United States v. Wilkins*, 943 F. Supp. 2d 248 (D. Mass.

2013), *aff'd sub nom. Wilkins v. United States*, 754 F.3d 24 (1st Cir. 2014). Circuit courts are split on the issue whether *Brady v. Maryland* requires disclosure of impeachment evidence prior to suppression hearings. *See United States v. Garcia*, 2017 WL 2290963, at *24-25 (D.N.M. May 2, 2017) (collecting cases); *United States v. Stott*, 245 F.3d 890, 901 (7th Cir. 2001). However, in *United States v. Ruiz*, the Supreme Court held that a prosecutor does not have to disclose impeachment evidence before the entry of a guilty plea. *See* 536 U.S. 622, 623 (2002). Given *Ruiz*, it is highly unlikely that the Supreme Court would require a prosecutor to disclose impeachment evidence before a suppression hearing. Nevertheless, at a minimum, the circuit split demonstrates that there is no clearly established federal law requiring impeachment evidence to be disclosed prior to a suppression hearing. *See Garcia*, 2017 WL 2290963, at *25; *Stott*, 245 F.3d at 902. In the absence of controlling Supreme Court precedent on this issue, the Court concludes that the Delaware Supreme Court's denial of Claim Three does not warrant relief under § 2254(d). *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (holding that lack of Supreme Court holding on specific issue precludes finding that state court decision on that issue was contrary to or unreasonable application of clearly established federal law).

## IV. PENDING MOTION

Petitioner filed a Motion to Expedite Ruling. (D.I. 24) Given the Court's decision to deny the Petition, the Court will dismiss the Motion to Expedite as moot.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the

16

constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claim does not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## VI.     CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is DENIED without an evidentiary hearing. An appropriate Order will be entered.